61 N.J. Super. 411 (1960)
161 A.2d 104
INEZ STENGEL GAY, PLAINTIFF-APPELLANT,
v.
HENRY IVAN STENGEL, INDIVIDUALLY, AND AS GUARDIAN OF ANNIE MAY STENGEL, INCOMPETENT (NOW DECEASED), DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1960.
Decided May 17, 1960.
*413 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Austin B. Johnson, Jr., argued the cause for appellant (Messrs. Johnson & Gallagher, attorneys).
Mr. Frederick M. Rollenhagen argued the cause for respondent (Messrs. Nugent & Rollenhagen, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from two Law Division orders, the first denying her motion for entry of default against defendant individually, and the second dismissing her complaint and entering judgment in favor of defendant as guardian of Annie May Stengel, an incompetent, now deceased. The parties are respectively the granddaughter and son of the incompetent.
By her action plaintiff sought recovery of $15,564.71, representing monies she claims she spent for the care and comfort of her grandmother from September 30, 1953 to the date of her death, January 22, 1956, together with interest and costs. The complaint was in two counts, the first seeking recovery from defendant as guardian of his mother, and the second from him individually. It recites that in June 1953 the parties had assumed custody of Annie May Stengel in Florida because she was incompetent and no longer able to care for herself. They were appointed co-guardians of her person by a Florida court on July 31, 1953. The complaint alleges defendant thereafter requested *414 plaintiff to take over the sole custody of the incompetent and that by agreement executed September 30, 1953 defendant, "individually and as guardian," agreed that in consideration of plaintiff's providing for the care, comfort, maintenance and interest of the incompetent, "he would assist her in recovering all of the funds expended by her," together with interest thereon, from the C.E. Henry Stengel trust fund, of which the incompetent was the beneficiary. Plaintiff alleges that pursuant to the agreement she took over the custody of the incompetent and provided her with food, clothing, lodgings, 24-hour nursing care, comfort and medical attention until the date of her death.
The complaint goes on to recite that defendant subsequently applied in ancillary proceedings in New Jersey to be appointed guardian of the person and property of the incompetent, with the result that he was appointed such guardian on March 11, 1955; that neither plaintiff nor the incompetent received notice of the application, nor did plaintiff know thereof prior to January 22, 1956, the day the incompetent died. Plaintiff alleges that defendant, as ancillary guardian, received $23,827.07 from the trustees of the Stengel trust fund; that he expended no part thereof for the support or maintenance of the incompetent; and that although plaintiff had demanded reimbursement in accordance with the September 30, 1953 agreement, defendant has refused to pay the $15,564.71 she spent in caring for the incompetent.
The summons and complaint were served upon defendant "individually and as guardian," by leaving a copy in the office of the Superior Court Clerk. Defendant at once served his answer "as guardian" and by way of separate defenses alleged: (1) he had been appointed guardian of the person and property of the incompetent by our Chancery Division and had duly qualified, but at no time had plaintiff ever requested or sought that he as guardian transfer or contribute money for the support, care and comfort of the incompetent; (2) plaintiff had, without his consent as *415 guardian, unlawfully undertaken the care and custody of the incompetent, he had never been consulted with respect thereto or authorized any of the alleged expenditures, and plaintiff's undertaking was completely voluntary and gratuitous; (3) the claim was excessive; (4) under N.J.S. 3A:6-36 and 3A:20-3 defendant, as guardian, had no authority to expend money in behalf of the incompetent without the prior approval by the Superior Court or a County Court of New Jersey and, finally, (5) plaintiff was never appointed by any New Jersey court having jurisdiction to determine the mental and physical incompetency of Annie May Stengel, and therefore any expenditures on behalf of the incompetent by reason of plaintiff's appointment in the foreign jurisdiction were not effectual and binding in this State.
Shortly after the answer had been filed plaintiff applied to the Law Division for an order directing the Superior Court Clerk to enter default against defendant individually. Supporting the motion was plaintiff's affidavit reciting the power of attorney signed by defendant on May 11, 1955, appointing the Superior Court Clerk as the person who might be served with all process affecting the estate of the incompetent, whereof he was guardian (see N.J.S. 3A:12-14); that the summons and complaint had been served upon the Clerk (see N.J.S. 3A:12-15); and that although the Clerk had accepted service for defendant as guardian, he refused to accept service in defendant's individual capacity. Plaintiff's motion was denied.
Thereafter defendant, as guardian, moved for an order dismissing the action because the complaint failed to state a claim against him as guardian or, in the alternative, for summary judgment in his favor as guardian on the ground that there existed no genuine issue as to any material fact and he was entitled to a judgment as a matter of law. The affidavit supporting the motion stated that the alleged agreement of September 30, 1953 had not been signed by defendant; that prior to his New Jersey appointment he had *416 never been appointed nor had he qualified as guardian of the property of the incompetent, in Florida, New Jersey or any other jurisdiction; and that subsequent to his appointment in this State he never saw his late mother nor, as guardian of her property, ever made any agreement, express or implied, wherein he agreed to pay plaintiff for any advances or expenditures of monies for the support and maintenance of the incompetent. Plaintiff filed a counter-affidavit, again referring to the September 30, 1953 agreement and her undertaking pursuant thereto. Thereafter the court entered an order dismissing the complaint and giving judgment to defendant as guardian.
There can be no question of the correctness of the court's dismissal of the second count of the complaint seeking recovery from defendant individually. The power of attorney filed by defendant pursuant to N.J.S. 3A:12-14 appointed the Superior Court Clerk his attorney "upon whom may be served any and all process affecting the aforesaid estate, or any interest therein, whereof I am Guardian," and it further recited that defendant agreed that "any process against the aforesaid estate so served, shall be of the same force and effect as if duly served upon me within this State." (Italics ours) The clear meaning of this power was that service on the Clerk would bring the estate within the jurisdiction of the court, but not defendant individually. The court therefore had no in personam jurisdiction over defendant. The question remains whether he can be made to respond as guardian of the person and property of the incompetent.
Although the agreement allegedly executed between the parties in Florida on September 30, 1953 recites in its opening paragraph that it is between defendant and plaintiff "as guardians of the person of Annie May Stengel," defendant concedes in his brief that it clearly purports to be an agreement between the two as individuals, and is allegedly so signed. Plaintiff thereby agreed to employ funds that she had borrowed against her one-third interest in the Stengel *417 trust fund to care for the incompetent, "with the understanding that [defendant], when funds are released from the C.E. Henry Trust Fund, will assist [plaintiff] to recover all the funds expended by [her]." It is on this agreement that plaintiff sues.
Defendant's position is that at the time the agreement is supposed to have been signed, he and plaintiff were merely co-guardians of the incompetent's person by appointment of the Florida court on July 31, 1953. Another Florida court had appointed a local attorney curator of the incompetent's personal property. Accordingly, the New Jersey guardianship of the ward's property conferred upon defendant was not, as plaintiff urges, a "continuation and extension" of the Florida guardianship. Defendant claims that the Florida agreement is not enforceable against him as New Jersey guardian of the incompetent's property because he was not a New Jersey property guardian on the date the contract was allegedly made; it could not be validated by defendant as property guardian subsequent to his appointment in New Jersey because he lacked power under the common law and our statutory law either to make or validate such an agreement at any time; and he never in fact validated the contract. As New Jersey guardian he is nothing more than a curator without title to the incompetent's property  a mere custodian of her person and property, citing Van Horn v. Hann, 39 N.J.L. 207 (Sup. Ct. 1877); Cooper v. Wallace, 55 N.J. Eq. 192 (Ch. 1896); In re Cooper, 95 N.J. Eq. 210 (E. & A. 1923); Hoffman v. Kahn, 119 N.J. Eq. 171 (Ch. 1935); and Mieczkowski v. Mieczkowski, 141 N.J. Eq. 367 (Ch. 1948). Since plaintiff never sued the incompetent for necessaries, support or maintenance supplied, or made any claim therefor against defendant while his ward was alive, she may not presently sue to recover for monies expended.
Disregarding for the moment that the incompetent is now dead, it should be observed that defendant, in stressing the common law rule, takes too narrow a view of the *418 powers and duties of a New Jersey guardian of an incompetent's person and property. Such a guardian is required by statute to provide for the care, safekeeping and support of the incompetent. N.J.S. 3A:6-36 (formerly R.S. 3:7-41) provides:
"Any such guardian shall provide for the care and safekeeping of the mental incompetent, shall take possession of his real and personal property and see to it that no waste or destruction of his real property is done or permitted and shall apply his personal property and the rents and profits of his real property so as properly to support the mental incompetent. The real property shall in nowise be aliened except pursuant to the law of this state."
The language of the statute is entirely clear. During the incompetent's lifetime defendant, as New Jersey guardian, could without order of the court have used so much of the income from the Stengel trust fund as was necessary for the support of his ward. See 6 N.J. Practice (Clapp, Wills and Administration), § 591, p. 616 (1950); In re Taub, 90 N.J. Eq. 293 (Ch. 1919).
Defendant asserts, however, that he, as New Jersey guardian, is not the proper person to be sued because his ward's death terminated his statutory power: his only duty is to make a proper account of his stewardship. In September 1956 defendant filed his complaint in the Chancery Division guardianship action (Docket C-1267-54) for settlement of his guardian's account and for distribution. The account lists income of $23,827.07 and disbursements of $941.01, and lists a number of claims approved by defendant as guardian, totalling $4,028.43. Annexed to the complaint is a copy of the last will of Annie May Stengel, probated in solemn form in our courts on March 9, 1956, naming Karl Raymond Stengel, defendant's brother, sole beneficiary and sole executor. (See Docket P-27-55.) Plaintiff filed exceptions to the account, and in the last paragraph alleged that she had expended $15,564.71 for the care, maintenance and support of the deceased incompetent, an itemized statement of which would be presented to defendant *419 guardian. She prayed that these expenditures be allowed by the guardian and paid to her.
A pretrial conference in the accounting proceedings was held May 21, 1957. The pretrial order, paragraph 3(E), states that the exceptant had withdrawn her claim for the incompetent's support and maintenance and had filed a claim in the Superior Court against Karl Raymond Stengel as executor. The accounting action is still pending.
The action by plaintiff against the executor was instituted by complaint filed May 7, 1957 (Docket L-8646-56). It recites the Florida and New Jersey backgrounds of the case, and seeks judgment against the executor for the sums expended on behalf of the incompetent, as well as a funeral bill of $2,811 incurred when she died. After the matter had been pretried in December 1957, plaintiff applied to the Law Division judge for leave to withdraw all counts in the complaint with the exception of the funeral bill. The application was granted by order entered February 24, 1958, "with prejudice." The funeral bill was finally settled.
It thus appears that once having asserted her claim in the guardian's accounting proceedings, plaintiff on her own motion withdrew it from any further consideration because of her suit against the executor, and that in the latter action, after fully presenting the claim, she applied for leave to withdraw it and was allowed to do so "with prejudice." This leaves her in the position of seeking recovery on the basis of the alleged 1953 Florida agreement whereby defendant is claimed to have bound himself to assist her in recovering all funds expended for the care and maintenance of the incompetent.
It should incidentally be noted that neither in the briefs nor at oral arguments was the court informed of what had happened in the accounting proceedings or that there had been an action against the executor, with the consequences stated above. Only our own recourse to the Superior Court Clerk's files has uncovered plaintiff's blowing hot and cold, first in the Chancery Division and then in the Law Division.
*420 We agree with defendant that the death of his ward on January 22, 1956 terminated his powers and duties as guardian, except to account and turn over to her personal representative the balance remaining in his hands after the accounting had been approved by the Chancery Division. See Van Horn v. Hann, above, 39 N.J.L. 207; In re Beier, 48 N.J. Super. 450 (Ch. Div. 1958); 6 N.J. Practice (Clapp, Wills and Administration), § 600, p. 630 (1950); 39 C.J.S., Guardian and Ward, § 41, p. 61 (1944); Annotation, 60 A.L.R.2d 963 (1958), setting out the general rule and cases supporting it; see also O'Mealey v. Grum, 186 Okl. 697, 100 P.2d 265, 130 A.L.R. 110 (Sup. Ct. 1940).
The orders under appeal are consequently affirmed, leave being given to plaintiff to seek possible reinstatement of her claim in the accounting action brought by defendant as guardian. In granting leave to apply in the pending Chancery Division proceedings we do not, of course, pass upon the merits of her claim or the defenses defendant may eventually be obliged to raise. Costs to defendant.