**Harland FREDERICK, as Personal Representative of the Estate of Anna Frederick, Respondent,**

v.

**PEOPLES STATE BANK OF MADISON LAKE, Defendant,**

**Mark Frederick, et al., Appellants.**

No. C3–85–1713.

Court of Appeals of Minnesota.

April 1, 1986.

Review Denied May 29, 1986.

James H. Manahan, Manahan, Partridge & Kurzman, Mankato, for Harland Frederick.

Donald H. Spartz, Christian, Spartz & Keogh, Le Center, for Peoples State Bank of Madison Lake.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Mark and Keith Frederick appeal from a district court judgment ordering them to pay Harland Frederick, the personal representative of the estate of Anna Frederick, .18431 of the proceeds of the sale of land that was devised to them with a life estate in Anna Frederick. Mark and Keith Frederick argue that Anna Frederick's estate is not entitled to any proceeds of the sale of the land in which she held a life estate since she died before the sale was closed and no equitable conversion of her interest could occur before the statutory and/or probate court order requirements allowing for such a sale are met. Further, they note that the testamentary intent of Frank Frederick, who devised the land to them, would be subverted if proceeds of the land were awarded to Anna Frederick's estate. We reverse.

## FACTS

The parties have stipulated to the facts which are condensed here. Frank Frederick devised to Mark and Keith Frederick an undivided one-half interest in 76 acres of Blue Earth County farmland, subject to a life estate in Anna Frederick. Anna Frederick subsequently entered a nursing home and a guardian was appointed to handle her affairs.

In 1984, Mark and Keith Frederick and the guardian of Anna Frederick agreed that the 76 acres should be sold and the proceeds from the sale be divided between the parties in proportion to their respective interests. On April 9, 1984, two purchase agreements were entered into with two separate parties, each for a portion of the 76-acre tract. Both agreements contained a clause providing, "This Purchase Agreement is subject to approval of the Blue Earth Probate Court." Closing was scheduled for June 8, 1984.

A $16,000 down payment was received of which $8,000 was used to purchase a drainage outlet from a third party—as required by the terms of the sale. The remaining $8,000 was held in a trust account at the Peoples State Bank of Madison Lake, Minnesota.

Upon the guardian's petition, the Blue Earth County Probate Court ordered the sale of Anna Frederick's interest. The May 8, 1984 order stated, in part:

> It is ordered further, that prior to such sale, said real estate shall be re-appraised by Leon Tacheny and Owen Vicker; and that immediately upon making such sale, the guardian shall file a report thereof.

The appraisals were never made and the report of sale was never filed.

Anna Frederick died on June 8, 1984 at the age of 88. Mark and Keith Frederick sold the property on July 31, 1984, executing the deeds and receiving $64,000 cash. In addition, they expect $25,000 in contract for deed payments.

Prior to the completion of the sale, Harland Frederick, the personal representative of Anna Frederick's estate, claimed her interest in the sale proceeds. When this claim was denied, he sued Mark and Keith Frederick and the Peoples Bank. The parties subsequently agreed that the bank

should continue to hold the monies pending the resolution of the lawsuit.

Following trial before the court, judgment was entered for the estate of Anna Frederick for .18431 of the proceeds of the sale, less proportionate expenses. Mark and Keith Frederick moved for a new trial. Their motion was denied and the court entered a supplementary judgment establishing the proceeds due the estate at $17,878.07, plus interest from July 31, 1984. The bank was directed to pay the monies it held in trust to the estate. Mark and Keith Frederick appeal from the supplementary judgment.

## ISSUE

Did the trial court err in concluding that the life estate interest of ward Anna Frederick equitably converted to personalty when her guardian signed a purchase agreement on her behalf?

## ANALYSIS

"The doctrine of equitable conversion has been applied in a multitude of cases, but not frequently in Minnesota." *Greenman v. McVey*, 126 Minn. 21, 25, 147 N.W. 812, 813 (1914).

An equitable conversion is a constructive, not an actual, change of realty into personalty or personalty into realty. The doctrine is based on the maxim that equity regards that as done which ought to have been done. It is a judicial device for giving effect to the intention of testators, donors, and perhaps others. *See Greenman v. McVey*, 126 Minn. 21, 147 N.W. 812 * * *.

An equitable conversion results only where there is a positive and imperative direction to sell at all events. *Greenman v. McVey*, 126 Minn. 21, 147 N.W. 812 * * *. A mere power of sale does not work an equitable conversion. Under such a power the title remains in the heirs, devisees, and legatees until divested by actual sale.

*In re Estate of Hencke*, 212 Minn. 407, 420–21, 4 N.W.2d 353, 359 (1942).

The trial court held that Anna Frederick's realty interest equitably converted to personalty when her guardian signed the purchase agreements, and that failure to follow court-directed requirements governing the sale did not defeat this conversion. The court noted that the sale was for the ward's best interest, the probate court confirmation was a ministerial or an administrative act, and there was no reason why the confirmation could not still be obtained.

Normally, equitable conversion occurs at the time a purchase agreement is signed. The vendee's interest under an executory contract for the sale of land is considered to be realty and the vendor's interest is considered to be personalty. 27 Am.Jur.2d Equitable Conversion § 11 (1966).

Here, the circumstances differ from the usual case in two significant ways:

(1) Anna Frederick was a ward whose legal authority could only be exercised through her guardian, under the probate court's direction and supervision; *see* Minn. Stat. §§ 525.539–.91 (1984), and

(2) Anna Frederick owned a life estate which may have terminated before there was a conversion of her interest.

The *time* of equitable conversion of real estate sold under and by court order determines whether Anna Frederick's estate has any interest in the proceeds of sale. Conversion at the time the sale is *ordered* by the probate court would entitle the estate to proceeds while conversion at the time the sale is *confirmed* would not.

■ The time at which a ward's realty interest converts to personalty has not been specifically addressed in Minnesota. However, in *Richardson v. Kotek*, 123 Minn. 360, 143 N.W. 973 (1913), the Minnesota Supreme Court held that where the probate court entered an order disapproving the sale of a ward's life estate interest, the guardian was thereby prevented from completing the contract. Therefore, no equitable conversion of a ward's interest in realty can occur before the probate court approves the contract for sale. In addition,

the probate court's role in such sales is not merely ministerial.

As appellants note, several other states have dealt with the issue of when a ward's realty interest equitably converts. An annotation entitled, "Proceeds of Sale or Condemnation of Real Property of Infant or Incompetent as Real or Personal Property," notes the following general rule: "[W]here the real estate of [an incompetent] is sold under statute or by order of court, or is taken in condemnation proceedings, the proceeds of sale remain realty for the purpose of devolution on his death intestate while still [an incompetent]." 90 A.L.R. 897, 909 (1934); *see also Brown v. Cowper*, 247 N.C. 1, 100 S.E.2d 305 (1957) (where realty of an incompetent is sold under statute or by court order, the proceeds of sale remain realty for purpose of devolution upon death of the incompetent). The rationale for this rule is that a court should not change the right of succession to the property in the event of the death of the incompetent. *See In Re McMillan*, 193 N.Y. 651, 86 N.E. 1127 (1908) (cited at 90 A.L.R. 910). Applying this rule, the Illinois Supreme Court states:

> Where land is sold by an order of court for any purpose, it is a fixed principle upon which the court always proceeds that the character of the property shall be changed only so far as may be necessary to accomplish the particular purpose. *Pomeroy's Equity Jurisprudence*, vol. 3, p. 1167; *Story's Equity*, vol. 2, p. 1101; * * *.

*Lewis v. Hill*, 387 Ill. 542, 547, 56 N.E.2d 619, 622 (1944). Thus, any surplus of proceeds of realty sold under court order pass as realty.

Under this view, Anna Frederick's interest never converted to personalty because a guardian cannot change the character of the ward's property. Since there was no indication that the proceeds were needed to pay expenses after the ward's death, there was no apparent need to change the character of her ownership interest from realty to personalty.

Further, as appellants note, Minnesota has set up special requirements which must be complied with before the land of a ward may be sold. *See* Minn.Stat. §§ 525.-62–.702 (1984). Here, the probate court, which authorized the sale of Anna Frederick's interest, ordered that two appraisals be performed before the sale and the guardian submit a report for the court's confirmation following the sale. *See* Minn. Stat. §§ 525.641, 525.651, 525.662 (1984). The appraisals were never made, the report was never submitted and the probate court never confirmed the sale. The legislature intended that the conversion of an incompetent's realty to personalty be completed only by following these prescribed procedures.

Although the trial court indicated that failure to obtain the probate court confirmation of sale was no impediment to the sale, we cannot agree. The probate court lost its authority over the ward upon her death.

> [W]hen a ward dies, the probate court loses jurisdiction of the guardianship matter, save and except the guardianship shall be immediately settled and the guardianship discharged as provided by law. The death of the ward stopped the proceedings authorizing the further sale of land belonging to the ward, and such judgment entered after the death of the ward was the judgment of the court having no jurisdiction over the subject-matter adjudicated.

*Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 430 (1932).

In addition, the guardian could not be directed to sign a deed once the ward has died.

> A deed executed by the guardian of an incompetent, after the incompetent's death, would convey nothing since the title would have already vested in the heirs or devisees.

*In re Beier*, 48 N.J.Super. 450, 451, 137 A.2d 617, 618 (1958). The New Jersey Superior Court explains why equitable conversion of an incompetent's property does not

occur at the time the purchase agreement is signed:

> The situation is not comparable to where the owner of real property enters into a contract of sale and then dies before executing a deed. In such situation, the other party may enforce the contract against the owner's estate, the theory being that equitable title to the property vests in the vendee as soon as the contract was executed, subject, however, to a lien in favor of the vendor for the unpaid purchase price. * * * Such contracts, therefore, are enforceable, even though one of the parties thereto may die before performance is had.
>
> In the present application, however, the sale by the guardian was expressly conditioned on the court's approving it and confirming it. * * * Until confirmation was had, therefore, the sale was unenforceable, and the death of the incompetent before it could be submitted to the court for confirmation operates as a bar to any further proceedings to complete such sale.

*Id.* (citations omitted)

■ We agree with the New Jersey Court, that the legislatively-created and court-mandated procedures for selling a ward's realty must be complied with before the sale becomes enforceable. Since the sale of the interest here is not enforceable, there was no conversion of Anna Frederick's life estate. This view effectuates the intent of the testator who conveyed a fee title to Mark and Keith Frederick and only a life estate to Anna Frederick. To find that Anna Frederick's estate is entitled to a portion of the proceeds of a sale never confirmed by the probate court defeats the testator's intent to grant Mark and Keith Frederick a fee title upon Anna Frederick's death.

There is no basis in this case for a court of equity to intervene. There was no imperative direction to convert the ward's interest. The sale was completed without the intervention of the court of equity because only the signatures of Mark and Keith Frederick were required on the deeds. The original testamentary intentions have been carried out and complied with in full.

### DECISION

■ Anna Frederick's life estate terminated before her guardian complied with the conditions of sale set by the order of the probate court. Her estate is therefore not entitled to a portion of the proceeds from the sale of the realty completed by remaindermen Mark and Keith Frederick after Anna Frederick's death.

Reversed.